UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60315-CIV-ROSENBAUM

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

W. ANTHONY HUFF,
DANNY L. PIXLER,
ANTHONY R. RUSSO,
OTHA RAY MCCARTHA, and
CHARLES J. SPINELLI,

        Defendants,

SHERI HUFF, ROXANN PIXLER,
MIDWEST MERGER MANAGEMENT, LLC, and
BRENTWOOD CAPITAL CORPORATION,

        Relief Defendants.
_____/

## ORDER

This matter comes before the Court upon Plaintiff United States Securities and Exchange Commission's Motion *In Limine* to Preclude Defendant W. Anthony Huff and Relief Defendants Sheri Huff, Roxann Pixler, and Midwest Merger Management, LLC, from Arguing or Claiming that the Commission Must Demonstrate Reliance, Loss Causation, Damages or Prove a Subjective Standard of Materiality ("SEC's Motion") [D.E. 146]. The Court has reviewed the SEC's Motion, Defendant W. Anthony Huff and Relief Defendants Sheri Huff, Roxann Pixler, and Midwest Merger Management, LLC's (collectively, "Defendant and Relief Defendants") Response [D.E.

193], the SEC's Reply [D.E. 203], and the record, and is otherwise duly advised in the premises, and now grants in part and denies in part the SEC's Motion.

## *Background*

This action began on March 6, 2008, when the Securities and Exchange Commission ("SEC") filed the original Complaint [D.E. 1] in this matter against Defendant W. Anthony Huff and Relief Defendants Sheri Huff, Roxann Pixler, Midwest Merger Management LLC, and Brentwood Capital Corporation.[1] Shortly thereafter, on April 4, 2008, the SEC filed its Amended Complaint for Injunctive and Other Relief [D.E. 15].

The Amended Complaint alleges that from 2001 through 2004, Defendant W. Anthony Huff ("Huff" or "Defendant"), along with others, "siphoned tens of millions of dollars" from Certified Services, Inc., a professional employee leasing organization. D.E. 15 at ¶ 1. According to the Amended Complaint, Huff secretly served as a "control person of Certified," and, with the others, employed "an elaborate scheme conducted in flagrant disregard of the federal securities laws." *Id.* More specifically, the Amended Complaint asserts that Huff and the others artificially inflated Certified's financial condition and failed to disclose related party transactions that benefitted Huff and the others. *Id.* at ¶ 2. As a result, the Amended Complaint continues, Huff and the others overstated Certified's financial condition to the SEC and the investing public by approximately $112 million. *Id.* The Amended Complaint further contends that Huff and the others accomplished this

---

[1] The Complaint also sought relief against Defendants Otha Ray McCartha, Charles J. Spinelli, Danny L. Pixler, and Anthony Russo. These Defendants, however, consented to judgment against themselves, *see* D.E. 2, D.E. 3, D.E. 17, and D.E. 73, respectively, and the Court, accordingly, entered judgment and a final injunction against these Defendants. *See* D.E. 24, D.E. 23, D.E. 25, D.E. 74. Because these Defendants no longer play a role in this case, this Order will not review their involvement in the prior proceedings except as necessary to explain currently pending matters.

feat by recording almost $47 million in "bogus Letters of Credit" as an asset on Certified's balance sheet while simultaneously failing to report approximately $65 million in liabilities. Consequently, Certified allegedly overstated its assets by approximately 35% and understated its liabilities by about 38% for the fiscal year-end 2002 and understated its liabilities by more than 50% for the fiscal year-end 2003. *Id.*

In addition, the Amended Complaint accuses Huff of using his control over Relief Defendant Midwest Management, LLC ("Midwest"), Certified's controlling shareholder, to divert money improperly out of Certified's coffers and into his own pocket by orchestrating Midwest's entry into "bogus agreements" with Certified. *Id.* at ¶ 3. As a result of these alleged violations, the SEC suggests, Defendant and Certified reaped "millions of dollars in ill-gotten gains." *Id.* at ¶ 4. To remedy these purported transgressions, the SEC seeks (1) a declaration that Huff violated the federal securities laws as alleged in the Amended Complaint; (2) a permanent injunction enjoining Huff and his agents from violating Section 17(a) of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), and aiding and abetting any violation of Section 10(b) and Rule 10b-5 of the Exchange Act; (3) an order requiring sworn accountings from Huff and Relief Defendants Sheri Huff, Roxann Pixler, Midwest, and Brentwood Capital Corporation ("Brentwood"); (4) an order requiring Huff and the Relief Defendants to disgorge ill-gotten gains; (5) an order directing Huff to pay civil money penalties under the Securities Act and the Exchange Act; (6) an order barring Huff from serving as an officer or director of any public company; and (7) an order precluding Huff from directly or indirectly participating in an offering of penny stock.

In preparation for trial, the SEC submitted, among other motions *in limine*, the pending Motion *In Limine* seeking to preclude Defendant and Relief Defendants from "arguing or claiming at trial that the [SEC] must demonstrate reliance, loss causation, damages, or prove a subjective standard of materiality." D.E. 146 at 1.  While Defendant and Relief Defendants concede that the "SEC need not prove investor reliance, loss causation, or damages for purposes of proving a [*prima facie*] case for violations of Section 17(a) of the Securities Act of 1933 or Section 10(b) of the Securities Exchange Act and Rule 10b-5," they, nonetheless, assert that the SEC's choices of requested remedies (money penalties and disgorgement) require the SEC "to prove loss causation to support the alternative calculation for a penalty [under the applicable statute] . . . and to prove disgorgement."  D.E. 193 at 1-2.  Thus, Defendant and Relief Defendants urge, the Court should deny the SEC's Motion.  In reply, the SEC responds that the "language in the penalty statute does not require proof of causation." D.E. 203 at 2.

## *Analysis*

Defendant and Relief Defendants concede that the "SEC need not prove investor reliance, loss causation, or damages for purposes of proving a [*prima facie*] case for violations of Section 17(a) of the Securities Act of 1933 or Section 10(b) of the Securities Exchange Act and Rule 10b-5." D.E. 193 at 1-2.  They further do not contest the objective materiality standard applicable in this case. *Id.* at 4.  Rather, Defendant and Relief Defendants challenge only the idea that the SEC need not demonstrate loss causation for purposes of the remedies that the SEC seeks.  As the parties' disagreement centers over the meaning of the civil monetary penalty provisions of the Securities Exchange Act of 1934, *as amended*, 15 U.S.C. §78u(d)(3), the Court pauses to set forth the civil

4

monetary penalty scheme that the statute provides. Section 78u(d)(3) authorizes courts to assess civil penalties according to a three-tier system:

> (B) Amount of penalty
>
> (i) First tier
>
> The amount of the penalty shall be determined by the court in light of the facts and circumstances. For each violation, the amount of the penalty shall not exceed the greater of (I) $5,000 for a natural person or $50,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation.
>
> (ii) Second tier
>
> Notwithstanding subparagraph (i), the amount of penalty for each such violation shall not exceed the greater of (I) $50,000 for a natural person or $250,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation, if the violation described in paragraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.
>
> (iii) Third tier
>
> Notwithstanding subparagraphs (i) and (ii), the amount of penalty for each such violation shall not exceed the greater of (I) $100,000 for a natural person or $500,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation, if –
>
>> (aa) the violation described in paragraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
>>
>> (bb) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

15 U.S.C. §78u(d)(2)(B).[2]

Defendant and Relief Defendants point to Part II of each of the penalty tiers ("the gross amount of pecuniary gain to such defendant as a result of the violation . . .") in contending that the statute requires the SEC to prove loss causation to support the alternative calculation for a penalty. D.E. 193 at 2. Quoting *Emergent Capital Investment Mgt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189 (2d Cir. 2003), Defendant and Relief Defendants then go on to define "loss causation" as "'the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.'" D.E. 193 at 3 n.1. The problem with Defendant and Relief Defendants' construction of each of the Parts II of Section 78u(d)(2)(B), however, stems from the fact that neither a reading of the statutory language nor of the applicable case law supports the definition of "loss causation" that they propose.

The Court commences its consideration of Section 78u(d)(2)(B) "where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." *Harris v. Garner*, 216 F.3d 970, 972-73 (11th Cir. 2000) (*en banc*) (citations omitted). With the exception of certain language contained in the third tier, which the Court shall address later in this opinion, the statutory language referring to "the gross amount of pecuniary **gain to such defendant** as a result of the violation" focuses not on any

---

[2] The Debt Collection Improvement Act of 1996 required the maximum amounts of all civil monetary penalties under the Securities Exchange Act of 1934, among other statutes, to be adjusted for inflation. *See* 17 C.F.R. § 201.2002. Consequently, for violations occurring after February 2, 2001, the first-tier maximum penalties were adjusted to $6,500 and $60,000 for a natural person and for any other person, respectively; the second-tier maximum penalties were increased to $60,000 and $300,000 for a natural person and for any other person, respectively; and the third-tier maximum penalties were augmented to $120,000 and $600,000 for a natural person and for any other person, respectively. *See id.* and *see* 17 C.F.R. pt. 201, subpt. E, tbl. II.

loss that an investor or other potential victim might have sustained, but rather, on the gain that a defendant enjoys as a result of a violation of the Exchange Act.  *See* 15 U.S.C. 78u(d)(2)(B) (emphasis added).  Indeed, the quoted portion of the statute never mentions an investor or victim, and it does not refer to such a person by description.  Instead, the statutory language ties the potential maximum penalty to the ***gain*** that a defendant would otherwise enjoy as a result of transgressions of the Exchange Act.  Consequently, the Court respectfully rejects any suggestion that the quoted language requires – or even permits – consideration of investors' losses in determining the potential maximum penalty that a court may impose.  As the language leaves no room for alternative interpretations, the Court does not consider the legislative history.

Nevertheless, the inquiry does not end with consideration of the part of the statute directing the Court to look to the "gain" to a defendant.  In this regard, the remainder of the phrase qualifies the gain that the Court should consider: "pecuniary gain to such defendant ***as a result of the violation***."  *See* 15 U.S.C. 78u(d)(2)(B) (emphasis added).  In other words, under the plain language of the statute, a court must tie the potential maximum penalty to financial gain that the defendant enjoyed because of the violation that the penalizing court found him to have committed.  Consequently, to obtain a penalty under the quoted portion of the tiers, the SEC must demonstrate not loss causation, but, for lack of a better descriptive term, gain causation.[3]  As a result, the Court

---

[3] Some might suggest that describing the necessary showing as "gain causation" instead of "loss causation" may be an exercise in sophistry because whenever a gain occurs, a loss must happen somewhere.  As a practical matter, however, proof of "gain causation" may differ substantially from proof of "loss causation."  Indeed, it may frequently be easier and more efficient for the SEC to demonstrate that a defendant incurred gains as a result of a violation than it may be for the SEC to show that specific investors suffered losses because of a defendant's violation.  Proving gains requires the SEC to focus on a single defendant or group of defendants, whereas proving losses may demand that the SEC present evidence of losses to thousands of victims.  Thus, the statutory focus on gain causation arguably presents a more efficient method

finds relevant the category of any evidence tending to show that Defendant either incurred or did not incur gains as a result the violations he is alleged to have committed in this case. To the extent that either party seeks to present such evidence, the Court denies the SEC's Motion *in Limine* at this time.

As for other parts of the statute that Defendant and Relief Defendants suggest require proof of loss causation, the plain language of subsection 78u(d)(3)(B)(iii)(bb) unambiguously does not require the SEC to show that any investor actually experienced any loss in order for a court to consider imposing third-tier penalties. A court may enter third-tier penalties under Subsection 78u(d)(3)(B)(iii)(bb) when it finds that a defendant has committed a violation that has merely "created a significant risk of substantial losses to other persons," although no person has actually incurred a loss. *See* 15 U.S.C. 78u(d)(3)(B)(iii)(bb); *see also SEC v. Aragon Capital Management, LLC*, ___ F. Supp. 2d ___, 2009 WL 4277244, *25 (S.D.N.Y. Nov. 24, 2009). Thus, even under subsection 78u(d)(3)(B)(iii)(bb), the SEC need not prove that any investor lost money in order for a court to consider imposing third-tier penalties. As the statutory language is clear, the Court grants the SEC's Motion *in Limine* to the extent that it seeks to preclude Defendant and Relief Defendants from arguing that Section 78u(d)(3)(B) requires the SEC to prove loss causation. Nevertheless, the statute is equally unambiguous in its direction that the SEC must demonstrate that Defendant "created a significant risk of substantial losses to other persons" in order to render Defendant eligible for the imposition of third-tier penalties. Defendant and Relief Defendants are free to present evidence showing that the charged conduct did not present such a risk and to argue that the SEC has failed to prove such a risk.

---

to encourage compliance with the Securities Act and the Exchange Act.

The Court further notes that courts have looked to the following general factors when imposing penalties under Section 78u(d)(3)(B):

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

*United States v. Abellan*, ___ F. Supp. 2d ___, 2009 WL 4730796, *7-8 (W.D. Wash. Dec. 7, 2009) (quoting *SEC v. Lybrand*, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003) (collecting cases)). Thus, any evidence pertaining to any of these issues that either party might offer at trial should at least meet the relevancy threshold.

Similarly, the disgorgement remedy anticipates depriving "the wrongdoer of his ill-gotten gain." *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005) (internal quotation marks omitted). As the Second Circuit has described disgorgement, "The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable. The deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits." *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972).

While this rationale allows for broader consideration of all of a defendant's wrongful conduct in violation of the securities laws, the court must, nonetheless, again limit any disgorgement remedy to "ill-gotten gain." In so doing, however, the Court notes that the amount of disgorgement "'need only be a reasonable approximation of profits causally connected to the violation.'" *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1312 (S.D. Fla. 2008) (citing *SEC v. First Jersey Sec.,*

*Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997)). Consequently, as with Section 78u(d)(3)(B), the inquiry focuses on a defendant's gain, not investors' losses. The Court therefore grants the SEC's Motion *in Limine* to the extent that it seeks to preclude Defendant and Relief Defendants from arguing that the SEC must demonstrate that investors lost money.

Nor, to the extent that Defendant and Relief Defendants suggest, does *Emergent Capital Investment Mgt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189 (2d Cir. 2003), support a different rule. *Emergent Capital* concerned a private, not an SEC, action. Accordingly, *Emergent Capital*'s discussion of the meaning of "loss causation" does not bear on the instant matter, where the law does not require the SEC to prove loss causation.

## *Conclusion*

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff United States Securities and Exchange Commission's Motion *In Limine* to Preclude Defendant W. Anthony Huff and Relief Defendants Sheri Huff, Roxann Pixler, and Midwest Merger Management, LLC, from Arguing or Claiming that the Commission Must Demonstrate Reliance, Loss Causation, Damages or Prove a Subjective Standard of Materiality ("SEC's Motion") [D.E. 146], consistent with the terms of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 12th day of January, 2010.

**ROBIN S. ROSENBAUM**
**UNITED STATES MAGISTRATE JUDGE**

cc:   All Counsel and Parties of Record