UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60315-CIV-ROSENBAUM

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

W. ANTHONY HUFF,
DANNY L. PIXLER,
ANTHONY R. RUSSO,
OTHA RAY MCCARTHA, and
CHARLES J. SPINELLI,

        Defendants,

SHERI HUFF, ROXANN PIXLER,
MIDWEST MERGER MANAGEMENT, LLC, and
BRENTWOOD CAPITAL CORPORATION,

        Relief Defendants.
_____/

**ORDER**

This matter comes before the Court upon Plaintiff United States Securities and Exchange Commission's Motion *In Limine* to Preclude Testimony by Defendant W. Anthony Huff and Relief Defendants Sheri Huff, Roxann Pixler, and Midwest Merger Management, LLC's Expert Witness ("Motion *In Limine*" or "Motion") [D.E. 147].  The Court has reviewed the SEC's Motion, Defendant W. Anthony Huff and Relief Defendants Sheri Huff, Roxann Pixler, and Midwest Merger Management, LLC's (collectively, "Defendant and Relief Defendants") Response [D.E. 194], the SEC's Reply [D.E. 201], and the record, and is otherwise duly advised in the premises, and now grants in part and denies in part the SEC's Motion.

### *Background*

This action began on March 6, 2008, when the Securities and Exchange Commission ("SEC") filed the original Complaint [D.E. 1] in this matter against Defendant W. Anthony Huff and Relief Defendants Sheri Huff, Roxann Pixler, Midwest Merger Management LLC, and Brentwood Capital Corporation.[1]  Shortly thereafter, on April 4, 2008, the SEC filed its Amended Complaint for Injunctive and Other Relief [D.E. 15].

The Amended Complaint alleges that from 2001 through 2004, Defendant W. Anthony Huff ("Huff" or "Defendant"), along with others, "siphoned tens of millions of dollars" from Certified Services, Inc., a professional employee leasing organization.  D.E. 15 at ¶ 1.  According to the Amended Complaint, Huff secretly served as a "control person of Certified," and, with the others, employed "an elaborate scheme conducted in flagrant disregard of the federal securities laws."  *Id.*  More specifically, the Amended Complaint asserts that Huff and the others artificially inflated Certified's financial condition and failed to disclose related party transactions that benefitted Huff and the others.  *Id.* at ¶ 2.  As a result, the Amended Complaint continues, Huff and the others overstated Certified's financial condition to the SEC and the investing public by approximately $112 million.  *Id.*  The Amended Complaint further contends that Huff and the others accomplished this feat by recording almost $47 million in "bogus Letters of Credit" as an asset on Certified's balance sheet while simultaneously failing to report approximately $65 million in liabilities.  Consequently,

---

[1] The Complaint also sought relief against Defendants Otha Ray McCartha, Charles J. Spinelli, Danny L. Pixler, and Anthony Russo.  These Defendants, however, consented to judgment against themselves, *see* D.E. 2, D.E. 3, D.E. 17, and D.E. 73, respectively, and the Court, accordingly, entered judgment and a final injunction against these Defendants.  *See* D.E. 24, D.E. 23, D.E. 25, D.E. 74.  Because these Defendants no longer play a role in this case, this Order will not review their involvement in the prior proceedings except as necessary to explain currently pending matters.

Certified allegedly overstated its assets by approximately 35% and understated its liabilities by about 38% for the fiscal year-end 2002 and understated its liabilities by more than 50% for the fiscal year-end 2003. *Id.*

In addition, the Amended Complaint accuses Huff of using his control over Relief Defendant Midwest Management, LLC ("Midwest"), Certified's controlling shareholder, to divert money improperly out of Certified's coffers and into his own pocket by orchestrating Midwest's entry into "bogus agreements" with Certified. *Id.* at ¶ 3. As a result of these alleged violations, the SEC suggests, Defendant and Certified reaped "millions of dollars in ill-gotten gains." *Id.* at ¶ 4. To remedy these purported transgressions, the SEC seeks (1) a declaration that Huff violated the federal securities laws as alleged in the Amended Complaint; (2) a permanent injunction enjoining Huff and his agents from violating Section 17(a) of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), and aiding and abetting any violation of Section 10(b) and Rule 10b-5 of the Exchange Act; (3) an order requiring sworn accountings from Huff and Relief Defendants Sheri Huff, Roxann Pixler, Midwest, and Brentwood Capital Corporation ("Brentwood"); (4) an order requiring Huff and the Relief Defendants to disgorge ill-gotten gains; (5) an order directing Huff to pay civil money penalties under the Securities Act and the Exchange Act; (6) an order barring Huff from serving as an officer or director of any public company; and (7) an order precluding Huff from directly or indirectly participating in an offering of penny stock.

In preparation for trial, the SEC submitted on September 3, 2009, among other motions *in limine*, the pending Motion *In Limine* seeking to preclude Defendant and Relief Defendants from presenting the testimony of their expert witness, R. Wayne Stratton, at trial. D.E. 147 at 1. As a

basis for the Motion, the SEC alleges that Defendant and Relief Defendants (1) did not provide the SEC with the QuickBooks records Stratton received from Defendant and Relief Defendants, reviewed, or relied upon in forming his expert opinion, (2) failed to give the SEC documents reflecting Stratton's sworn testimony over the past four years, despite a subpoena served on Stratton seeking such information, and (3) refused to permit Stratton to answer questions during his deposition on August 4, 2009, concerning his expert testimony in other cases that the SEC deems to have relevance to the validity of Stratton's opinion. *Id.*

Defendant and Relief Defendants oppose the SEC's Motion. *See* D.E. 194. They argue first that the subject matter of the SEC's Motion is not appropriate for a motion *in limine* where the SEC has not first sought to compel the evidence it alleges that Defendant and Relief Defendants have wrongly withheld. *Id.* Moreover, Defendant and Relief Defendants contend, even if the Court construes the SEC's Motion *in Limine* as a motion to compel, Defendants assert that they have already turned over the QuickBooks records, thereby mooting that issue. *Id.* As for the documents reflecting Stratton's testimony, Defendant and Relief Defendants cite the Federal Rules of Civil Procedure and observe that they require only that a party provide its opponent with a list, not the substance, of prior testimony of an expert witness. *Id.* Because Defendant and Relief Defendants have done that, they argue that their decision not to provide the SEC with the substance of Stratton's prior testimony cannot serve as a basis for sanctions or an order compelling Defendant and Relief Defendants to give the SEC such materials. *Id.* Finally, Defendant and Relief Defendants urge that the SEC has failed to meet its burden to demonstrate the relevance of Stratton's testimony in other cases to the instant matter. *Id.* Accordingly, Defendant and Relief Defendants assert, the Court should deny the SEC's Motion in its entirety. *Id.*

In its Reply, the SEC controverts Defendant and Relief Defendants' claims that the QuickBooks records that Defendant and Relief Defendants provided to the SEC satisfies the SEC's request for QuickBooks records that Stratton received, reviewed, or relied upon in this matter because the QuickBooks records that Defendant and Relief Defendants gave to the SEC reflect that they have been changed since this litigation commenced, thus reflecting different data than that which Stratton received, reviewed, or relied upon.  D.E. 201.  With regard to the substance of prior sworn testimony, the SEC argues that Defendant and Relief Defendants' obligation to provide the SEC with such information arises not from the Federal Rules of Civil Procedure, but rather, from the subpoena *duces tecum* that the SEC served on Stratton.  *Id.*  Finally, as it pertains to the relevance of Stratton's testimony in other cases, the SEC states that in *Mike Kreidler v. Danny Pixler*, Case No. C06-697-RSL, Stratton offered an opinion that based on the QuickBooks records, Midwest Merger paid Cascade Insurance Company more than $6.8 million, whereas approximately one year later, in the instant matter, Stratton opined that based on the same QuickBook records, Midwest Merger paid Cascade Insurance Company more than $8.3 million.  *Id.*  As a result of this alleged discrepancy, the SEC contends that Stratton's opinion in *Kriedler* is relevant in this case, or, at the very least, that under the broad scope of discovery, the SEC was entitled to investigate the alleged discrepancy.  *Id.* Thus, the SEC renews its request that the Court preclude Defendant and Relief Defendants from relying upon Stratton.  *Id.*

## *Analysis*

The Court begins by addressing the threshold issue that Defendant and Relief Defendants raise: the advisability of the SEC's decision to contest the actions of Defendant and Relief Defendants regarding Stratton by way of motion *in limine* instead of motion to compel.  Excluding

expert testimony is a severe sanction that is not appropriate where a party's actions were justified or do not result in prejudice to the opposing party. *See In re Nitro Leisure Products, L.L.C.*, 2003 WL 25669322, *1 (S.D. Fla. Dec. 16, 2003). Indeed, had the SEC filed its Motion *in Limine* as a motion to compel seeking the same information that the SEC alleges that Defendant and Relief Defendants have wrongfully withheld, the Federal Rules of Civil Procedure authorize, at most, only a court order requiring the opposing party to provide the requested information and imposing reasonable expenses incurred in making the motion, including attorney's fees. *See* Fed. R. Civ. P. 37(a). Moreover, should the Court determine that Defendant and Relief Defendants have wrongfully withheld the requested information, sufficient time exists for Defendant and Relief Defendants to remedy the situation without seriously prejudicing the SEC.

      Under these circumstances, allowing a party to seek to exclude testimony without first taking the less drastic action of attempting to compel production of the requested information seems like permitting a party to play discovery "gotcha." When a party deems a discovery production to be lacking, it generally has two choices after unsuccessfully attempting to resolve the conflict: it can file a motion to compel, or it can let the conflict go and elect to do nothing further to obtain the information at issue. Although this Court is reluctant to find that failure to file a motion to compel waives a party's right to seek to exclude evidence or other severe sanctions, fairness suggests that a party opposing the discovery should have the opportunity to do so without subjecting itself to the death penalty for its evidence, if it guesses wrong. Thus, this Court agrees with Defendant and Relief Defendants that here, where the SEC has not demonstrated or even alleged bad faith on the part of Defendant and Relief Defendants, and further, where the SEC will not be prejudiced by receiving at this time the information it seeks through its Motion, it is more appropriate for the Court

to consider the alleged wrongful withholding of information within the context of a motion to compel. As a result, the Court construes the SEC's Motion *in Limine* as a motion to compel.[2]

In evaluating the three specific issues that the SEC brings before the Court in its Motion, the Court turns to Rule 26(b), Fed. R. Civ. P., which sets forth the permissible parameters of discovery. Under this Rule,

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [that] appears reasonably calculated to lead to the discovery of admissible evidence . . . , [as long as the Court does not find that] (i) the discovery sought is unreasonably cumulative or duplicative, or . . . obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. . . ."

R. 26(b), Fed. R. Civ. P. The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a **broad** search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Adv. Com. Notes, 1946 Amendment, R. 26, Fed. R. Civ. P. (citations omitted) (emphasis added). Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'" *Id.* (citation omitted).

---

[2] In view of the fact that the deposition where the SEC sought to obtain the information at issue occurred on August 4, 2009, and the SEC filed the pending Motion on September 3, 2009, within thirty days of the occurrence of the conduct giving rise to the Motion, the Court finds that the SEC timely filed the pending Motion under Local Rule 26.1.H.1, S.D. Fla.

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure.  As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial.  Properly used, they prevent prejudicial surprises and conserve precious judicial energies.  The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[3] (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)).  Of course, the scope of permissible discovery is not unbounded.  Requested discovery must be relevant, and it must not impose an undue burden, under the tests described in Rule 26(b)(2)(C).  With this guidance in mind, the Court turns to each of the three areas where the SEC seeks to compel information.

**1. The QuickBooks Records**

The subpoena that the SEC served on Stratton seeks, among other documents, "[a]n electronic version of any [Q]uick[B]ooks or any other computer software received, reviewed or relied upon in this matter."  Defendant and Relief Defendants neither filed a motion for protective order seeking to shield the requested information nor currently contest the potential relevance of this information but instead state simply that they have complied with the SEC's request and turned over the records at issue.  Noting that the version it received from Defendant and Relief Defendants contains changes made following initiation of the instant litigation, the SEC complains that Defendant and Relief Defendants have failed to provide the SEC with all versions of the

---

[3] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

QuickBooks records that Stratton received, reviewed, or relied upon. The record contains no further information from Defendant or relief Defendants in this regard.

Because the Court finds the information to be relevant, and further, because Defendant and Relief Defendants have effectively waived any objections they might have had to the request for such information by failing to file an appropriate motion relieving Stratton of his obligation to comply with the subpoena, the Court finds that Defendant and Relief Defendants must produce all information responsive to the subpoena request. To the extent that Defendant and Relief Defendants believe that they have already done so, they shall file an affidavit signed by Stratton stating that the QuickBooks records produced to the SEC comprise the totality of the QuickBooks records Stratton received, reviewed, or relied upon, and explaining how that can be the case, despite what appear to be changes made to the records after the beginning of this litigation. Stratton shall also be subject to deposition on these points. Defendant and Relief Defendants shall provide the SEC with either the requested information or the affidavit by **Wednesday, January 20, 2010.**

**2. The Prior Sworn Testimony**

The subpoena served upon Stratton also seeks "[a]ll documents reflecting sworn testimony given by [Stratton] in the last four years." As Stratton received a duly executed subpoena requesting these documents, it was incumbent upon Stratton or Defendant and Relief Defendants to file a motion for protective order or other appropriate motion seeking to relieve Stratton of the obligation to provide the subpoenaed documents if Stratton or Defendant and Relief Defendants wished to contest the SEC's right to obtain the substance of the sworn testimony from Stratton. Moreover, Defendant and Relief Defendants offer no reason why they should not have to produce Stratton's testimony over the past four years other than to note that Rule 26(a)(2)(B)(v), Fed. R. Civ. P.,

requires only a list of other cases where the witness has testified as an expert. *See* D.E. 194 at 4. Finally, the court finds such materials to be reasonably calculated to lead to admissible evidence in that, at the very least, they constitute possible impeachment evidence. "Impeachment evidence is a classic example of the type of evidence that should be discoverable in litigation." *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, 2007 WL 1526649, *2 (S.D. Fla. May 22, 2007) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Thus, the Court grants the SEC's Motion as it seeks to compel Defendant and Relief Defendants to produce "[a]ll documents reflecting sworn testimony given by [Stratton] in the last four years." Defendant and Relief Defendants shall produce to the SEC all responsive information by **Wednesday, January 20, 2010.**

### 3.  Questions Pertaining to *Kriedler*

Defendant and Relief Defendants oppose the SEC's Motion seeking to compel Stratton to answer questions relating to the expert opinion he offered in *Kriedler*, arguing that the SEC has failed to demonstrate any relevance of Stratton's *Kriedler* opinion to Stratton's opinion in the pending matter. D.E. 194 at 5. In fact, however, the SEC has proffered that in both the instant case and in *Kriedler*, Stratton opined on the total amount of money that Midwest Merger paid to Cascade Insurance Company, and his answers in each case differed substantially from each other. D.E. 147 at 2-3; D.E. 201 at 3-4. Based on this uncontested proffer, the SEC has satisfied its obligation to demonstrate that the information it seeks regarding Stratton's *Kriedler* opinion is relevant or reasonably calculated to lead to admissible evidence. Consequently, the Court grants the SEC's Motion as it seeks to compel Stratton to answer questions concerning his expert testimony and work in *Kriedler*. Stratton shall submit to a deposition on these matters (and, if necessary, any matters discussed under Section 1 above) by **Wednesday, January 27, 2010.**

*Conclusion*

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff United States Securities and Exchange Commission's Motion *In Limine* to Preclude Testimony by Defendant W. Anthony Huff and Relief Defendants Sheri Huff, Roxann Pixler, and Midwest Merger Management, LLC's Expert Witness [D.E. 147], consistent with the terms of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 13th day of January, 2010.

*[signature]*
**ROBIN S. ROSENBAUM**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel and Parties of Record