UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60315-CIV-ROSENBAUM
(CONSENT CASE)

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

W. ANTHONY HUFF,
DANNY L. PIXLER,
ANTHONY R. RUSSO,
OTHA RAY MCCARTHA, and
CHARLES J. SPINELLI,

        Defendants,

SHERI HUFF, ROXANN PIXLER,
MIDWEST MERGER MANAGEMENT, LLC, and
BRENTWOOD CAPITAL CORPORATION,

        Relief Defendants.
_____/

## ORDER

This matter is before the Court on Defendant W. Anthony Huff and Relief Defendants Sheri Huff and Midwest Merger Management, LLC's Motion for Amended Findings Pursuant to Rule 52(b), to Amend the Judgment Pursuant to Rule 59(e), and, Alternatively, for New Trial Pursuant to Rule 69(a) ("Defendant's Motion") [D.E. 314]. The Court has carefully considered Defendant's Motion, all filings in support thereof and in opposition thereto, and the record and, for the reasons set forth below, now (1) **GRANTS IN PART AND DENIES IN PART** the Motion as it seeks amended filings, and the Court separately files its Amended Findings of Fact

and Conclusions of Law, (2) **DENIES** the Motion as it seeks an amended Judgment, and (3) **DENIES** the Motion as it seeks a new trial.

### *I.  Procedural Background*

This action began on March 6, 2008, when the Securities and Exchange Commission ("SEC") filed the original Complaint [D.E. 1] in this matter against Defendant W. Anthony Huff ("Huff") and Relief Defendants Sheri Huff, Roxann Pixler, and Midwest Merger Management LLC (collectively "Relief Defendants").  Shortly thereafter, on April 4, 2008, the SEC filed its Amended Complaint for Injunctive and Other Relief [D.E. 15].  The Amended Complaint also sought relief against Defendants Otha Ray McCartha, Charles J. Spinelli, Danny L. Pixler, Anthony Russo, and Relief Defendant Brentwood Capital Corporation.  *See* D.E. 15.

Defendants, McCartha, Spinelli, Pixler, and Russo consented to judgment against themselves, *see* D.E. 2, D.E. 3, D.E. 17, and D.E. 73, respectively, and the Court entered judgments and final injunctions against these Defendants.  *See* D.E. 24, D.E. 23, D.E. 25, D.E. 74.  As for the Relief Defendant Brentwood Capital Corporation, on May 21, 2008, the Court affirmed an Order of Default entered by the Clerk against Brentwood Capital Corporation, Inc.  *See* D.E. 33.

The Amended Complaint alleged that from 2001 through 2004, Defendant Huff, along with others, "siphoned tens of millions of dollars" from Certified Services, Inc. ("Certified"), a professional employee leasing organization.  D.E. 15 at ¶ 1.  According to the Amended Complaint, Huff secretly served as a "control person of Certified," and, with others, employed "an elaborate scheme conducted in flagrant disregard of the federal securities laws." *Id.*  More specifically, the Amended Complaint asserted that Huff and others artificially inflated

Certified's financial condition and failed to disclose related party transactions that benefitted Huff and the others. *Id*. at ¶ 2. As a result, the Amended Complaint continued, Huff and others overstated Certified's financial condition to the SEC and the investing public by approximately $112 million. *Id.*

The Amended Complaint further contended that Huff and others accomplished this feat by recording almost $47 million in "bogus Letters of Credit" as an asset on Certified's balance sheet while simultaneously failing to report approximately $65 million in liabilities. Consequently, Certified allegedly overstated its assets by approximately 35% and understated its liabilities by about 38% for the fiscal year-end 2002 and understated its liabilities by more that 50% for the fiscal year-end 2003. *Id*.

In addition, the Amended Complaint accused Huff of using his control over Relief Defendant Midwest Management, LLC ("Midwest"), Certified's controlling shareholder, to divert money improperly out of Certified's coffers and into his own pocket by orchestrating Midwest's entry into "bogus agreements" with Certified. *Id*. at ¶ 3. As a result of these alleged violations, the SEC suggested, Huff and the Relief Defendants reaped "millions of dollars in ill-gotten gains." *Id*. at ¶ 4. To remedy these purported transgressions, the SEC sought (1) a declaration that Huff violated the federal securities laws as alleged in the Amended Complaint; (2) a permanent injunction enjoining Huff and his agents from violating Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* ("Securities Act"), and Sections 10(b) and 20(a) and Rule 10b-5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* ("Exchange Act"), and from aiding and abetting any violation of Section 10(b) and Rule 10b-5 of the Exchange Act; (3) an order requiring sworn accountings from Huff and Relief Defendants Sheri

Huff, Roxann Pixler, Midwest; (4) an order requiring Huff and the Relief Defendants to disgorge ill-gotten gains;  (5) an order directing Huff to pay civil money penalties under the Securities Act and the Exchange Act; (6) an order barring Huff from serving as an officer or director of any public company; and (7) an order precluding Huff from directly or indirectly participating in an offering of penny stock.

The SEC, Huff, and the Relief Defendants (collectively, "the Parties") filed a Notice of Right to Consent to Disposition of a Civil Case By A United States Magistrate. [D.E. 160]. The Honorable William J. Zloch then assigned this matter to me. *See* D.E. 160.  The Court conducted a seven-day bench trial and entered its Findings of Fact and Conclusions of Law on September 30, 2010. [D.E.s 258-264, D.E. 308].  Essentially, the Court determined that Huff had used Midwest and an agreement he had directed to be entered into between Midwest and Certified to drain Certified of millions of dollars, much of which Huff then spent for his own benefit and that of his family and friends. *See* D.E. 308.  Prolonging the life of this scheme, Huff caused Certified's public filings to make material misrepresentations and to omit material facts, thus enabling the scheme to continue while Certified raised funds through public offerings.

Based on the Findings of Fact and Conclusions of Law, on October 22, 2010, the Court entered judgment for the SEC against Defendant W. Anthony Huff ("Huff" or "Defendant") on all five counts of the Amended Complaint in this case. D.E. 313.  More specifically, the Court entered judgment for the SEC and against Huff with regard to the following charges:  Count I alleged that Huff employed devices, schemes, or artifices to defraud in the offer of securities, in violation of Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1). D.E. 15 at 23-24. Count II also asserted a violation of the Securities Act but contended that Huff, in the offer of

4

securities, obtained money or property by means of false statements of material facts and omissions of material facts necessary to make statements made, in the light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, and courses of business that operated as a fraud or deceit upon purchasers and prospective purchasers of such securities, in violation of 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).  D.E. 15 at 24.

In Counts III through V, the SEC set forth causes of action under the Exchange Act, 15 U.S.C. § 78a, *et seq.*  Count III averred that Defendant Huff violated 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5 by, in connection with the purchase or sale of securities, employing devices, schemes, or artifices to defraud; making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaging in acts, practices, and courses of business that have operated as a fraud on the purchasers of such securities.  D.E. 15 at 25.  Similarly, Count IV asserted that Huff aided and abetted Certified, Russo, Pixler, and McCartha in committing the violations of the Exchange Act already described in Count III.  D.E. 15 at 25-26.  Finally, in Count V, the SEC alleged that Huff was a control person of Certified, and, as such, was jointly and severally liable with and to the same extent as Certified for its violations of Section 10(b) and Rule 10b-5 of the Exchange Act.  D.E. 15 at 26-27.

The Judgment declined to order a penny stock bar but imposed an officer-and-director bar, disgorgement in the amount of $10,017,000 plus $3 million in interest, a civil monetary penalty of $600,000, and a permanent injunction against Defendant ordering him not to commit further violations of the federal securities laws.  *See* D.E. 313.  In addition, the Court entered

judgment against Relief Defendants Sheri Huff and Midwest, holding them responsible for $3,800,000 and $10,017,000, respectively, in disgorgement.  *Id.*  As for Relief Defendant Roxann Pixler, the Court entered judgment for her against the SEC.  *Id.*

On November 19, 2010, Huff and Relief Defendants Sheri Huff and Midwest (collectively, "Relief Defendants") filed the pending Motion.  D.E. 314.  Defendants' Motion alleges that the Court's Findings of Fact and Conclusions of Law and the Court's Final Judgment "are predicated upon material errors of law and unsupported findings of fact."  *Id.* at 2.  More specifically, Defendant's Motion asserts that the Court neither made findings of fact nor could find based on the evidence adduced at trial that Huff himself violated the securities laws.  It further argues that the Findings of Fact and Conclusions of Law do not make the requisite finding of scienter necessary to justify entry of judgment against Huff as a control person of Certified, and it similarly posits that the Court failed to identify a primary violator of the securities laws so that Huff could be liable as an aider and abettor.  Finally, Defendant's Motion takes issue with the disgorgement aspect of the Judgment, suggesting that the $10,017,000 ordered to be disgorged is not causally connected to any violations of the securities laws in which Defendant was found to have engaged.

The SEC filed its Response to Defendant's Motion on December 7, 2010.  *See* D.E. 316.  On December 16, 2010, Defendant and Relief Defendants filed their Reply.  *See* D.E. 318.  This Motion is now ripe for resolution.

## *II.  Analysis*

Although the Court is aware of the stringent standard applying to motions to amend findings of fact and conclusions of law under Rule 52(b), Fed. R. Civ. P., *see, e.g.*, *Hannover*

*Ins. Co. v. Dolly Freight, Inc.*, 2007 WL 170788, *2 (M.D. Fla. Jan. 18, 2007), this Court sees no reason not to amend the Findings of Fact and Conclusions of Law to provide further clarification of the Court's earlier findings where, as here, such clarification is easily accomplished and can address the issues raised by Defendant and Relief Defendants.  Consequently, the Court grants in part Defendant and Relief Defendants' Motion to the extent that it seeks for the Court to amend its Findings of Fact and Conclusions of Law and accordingly amends its Findings of Fact and Conclusions of Law in accordance with the principles set forth below.

First, Defendant and Relief Defendants first assert that the Court did not make discrete findings for each claim in the Amended Complaint.  *See* D.E. 14.  With regard to Counts I through III, Defendant objects that the Court "never found that *Huff* made a misrepresentation or omission under federal law."  *See id.* at 3-5 (emphasis in original).[1]  Thus, Defendant suggests, "[p]rimary liability has not been established, and Huff should prevail . . . ."  *Id.* at 4.

The Court respectfully disagrees that the 122-page Findings of Fact and Conclusions of Law do not establish Huff's primary liability, control person liability, or aiding and abetting liability.  Nevertheless, in the interest of clarity, by separate docket entry, the Court amends the Findings of Fact and Conclusions of Law to state expressly this Court's determination that Huff has primary liability under Counts I through III of the Amended Complaint, aiding and abetting liability under Count IV of the Amended Complaint, and control person liability under Count V of the Amended Complaint.  In addition, the Court supplements its Findings of Fact and

---

[1] Some docket entries, including this one, have two page-numbering systems resulting in different page numbers on the same page: the page number of the original document and the page number imprinted across the top of the page by the Court's CM/ECF system.  This Order refers to the page numbers left by the Court's CM/ECF system.

Conclusions of Law to state expressly other findings of fact and conclusions of law that this Court believes were, at the very least, implied by the original Findings of Fact and Conclusions of Law but that Defendant Huff and Relief Defendants suggest that this Court has not made.

As for remedies, Defendant and Relief Defendants assert that even if Huff engaged in all of the violations that the Court found that he had committed, none of those violations justify the Court's entry of disgorgement and interest. The gravamen of Defendant's complaint regarding the disgorgement order stems from his perception that the $10,017,000 in disgorgement ordered did not constitute "ill-gotten gain" from the violations that the Court found in this case, as, under the Court's Findings, Defendant secured those monies from looting Certified, ostensibly not as a result of causing material misrepresentations and omissions of fact in Certified's SEC filings and engaging in a device to defraud. Put simply, Defendant does not quarrel with the characterization of the $10,017,000 ordered disgorged as "ill-gotten gain" but rather suggests that he did not receive this particular "ill-gotten gain" as a result of the violations that this Court found. As a result, Defendant reasons, the $10,017,000 is not subject to disgorgement.

Because the Court has found that Defendant did obtain the $10,017,000 in connection with the SEC violations charged in this case, however, the Court disagrees that the $10,017,000 is not subject to disgorgement. In the interest of clarity, the Court has amended the Findings of Fact and Conclusions of Law to expressly state that it has so determined and to further expound upon the reasons supporting this conclusion.

Similarly, the Court has concluded that as part of his ill-gotten gain, Huff enjoyed the benefit of millions of dollars interest-free. Because he would have had to have obtained a loan and paid interest on that loan had he been able to borrow the same monies during that period, the

Court awarded interest in this case.  In the interest of clarity, the Court has amended the Findings of Fact and Conclusions of Law to expressly so state.

Finally, although the original Findings of Fact and Conclusions of Law accurately state that Defendant Huff was indicted in connection with certain of his activities at All Risk Services, Ltd., as Defendant Huff and Relief Defendants point out, the original Findings of Fact and Conclusions of Law subsequently incorrectly describe this indictment as having been associated with Huff's work at U.S. Trucking, another company at which Huff previously worked.  The Court regrets the scrivener's error and has amended the Findings of Fact and Conclusions of Law to make the necessary corrections.

### *III.  Conclusion*

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant W. Anthony Huff and Relief Defendants Sheri Huff and Midwest Merger Management, LLC's Motion for Amended Findings Pursuant to Rule 52(b), to Amend the Judgment Pursuant to Rule 59(e), and, Alternatively, for New Trial Pursuant to Rule 69(a) [D.E. 314].  More specifically, the Court (1) **GRANTS IN PART AND DENIES IN PART** the Motion as it seeks amended filings, and the Court separately files its Amended Findings of Fact and Conclusions of Law, (2) **DENIES** the Motion as it seeks an amended Judgment, and (3) **DENIES** the Motion as it seeks a new trial.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 17th day of December 2010.

_____
**ROBIN S. ROSENBAUM**
**UNITED STATES MAGISTRATE JUDGE**

cc:      Counsel of Record